CRESCENT CITY, The (SEAMAN v.). See Case No. 12,581.

## Case No. 3,387.

### CRESCENT CITY ICE CO. v. STAFFORD.

[3 Woods, 94.][1]

Circuit Court, D. Louisiana. Nov. Term, 1877.

DECEDENT'S ESTATES—RIGHTS OF ADMINISTRATOR.

1. A court of probate cannot authorize an administrator to take possession of any property of which the title or right of possession is not in the estate of the intestate.

2. The title of property belonging to the estate of a decedent vested in an administrator appointed by the court of the domicile of the decedent, is not divested by the transportation of the property to another state to be sold in its markets.

3. An administrator appointed in such other state is not entitled to the possession of such property so transported thereto for sale.

In equity. Heard upon motion for an injunction pendente lite. The substance of the bill was that the complainants were a commercial association. a partnership doing business under the name and style of the Crescent City Ice Co., in the city of New Orleans, whose members were composed of citizens of several states of the United States other than the state of Illinois; that the respondent was a citizen of the state of Illinois; that the firm of Hess & Reid, of Illinois, were the owners of three barges laden with ice, and that on February 24, 1877, they sold the cargoes of ice laden on the three barges to one Bowles. who paid in cash therefor the sum of $849.25, and agreed to pay, upon the delivery of the ice in New Orleans. the freight thereon, which amounted to about $58; that after the contract of

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

purchase had been entered into, and while the ice was thus laden on board of these barges, and remained within the state of Illinois, the said Bowles departed this life. Two citizens of Illinois, to wit, Summers and Turner, were appointed administrators of her estate by the proper mortuary court having jurisdiction over the same within the state of Illinois; that they were duly qualified and entered upon their duties as administrators; that said Summers and Turner, as such administrators, finding that the value of the ice, upon its delivery in New Orleans, would not more than equal the freight contracted to be paid, sold the same to the complainants for the amount of the freight, to wit, $58, which was paid to the said Hess & Reid, to whom the same was due; that the respondent, without any right or color of title, was interfering with the possession of complainants; that he was insolvent, and they prayed that he, his servants and agents, be enjoined from further interference with their possession of the ice.

The "Exhibit A" annexed to the bill, was the contract of sale of the ice, and showed that the ice was in the first instance sold by Hess & Reid to Miss Bowles for the sum of $849.25. It provided that the vendors should cause the barges to be towed from Quincy, Illinois, to the city of New Orleans. As the consideration for the use of said barges, and the towing of the same, Mrs. Bowles agreed to pay to Hess & Reid the further sum of $58 as soon as the barges, or either of them, should land at New Orleans, and upon notification by telegram of the fact; the money for this payment having been deposited by Bowles in Ricker's bank at Quincy, Illinois. The contract contained an authorization to Ricker to pay the said sum upon the receipt of said telegram. The contract further provided that if all of the barges were sunk, Hess & Reid were to repay to Bowles the $849.25, or if any of them were sunk, proportionately for the same. The exhibits further showed the payment of $58 to Capt. Sawyer, who received the same for Hess & Reid. The affidavits on behalf of the respondent showed that he has been appointed provisional administrator of the estate of Bowles in the state of Louisiana, and as such administrator, and under the order of the mortuary court in Louisiana, claimed the right to possess and dispose of said ice, and a denial in the most emphatic manner that the Illinois administrators had reduced said ice to possession within the state of Louisiana.

J. Ad. Rosier, John Finney, and H. C. Miller for complainants.

T. A. Bartlett, for defendant.

BILLINGS, District Judge. The point was urged with great force by the solicitor for defendant, that there was a conflict of jurisdiction between the courts, and that the mortuary court which appointed the defendant administrator was seized of jurisdiction, over this property. There is no conflict of jurisdiction, nor can there be in this case. It was not in the power of the mortuary court of Louisiana, by virtue of any order, to give the defendant authority to possess any property which did not belong to the estate of the decedent, and which the estate was not also entitled to possess. If any party has a better title or a better right to possess, he cannot be divested by any order of the mortuary court, and the question as to whether the property belongs to the estate of the decedent, and whether such estate was entitled to its possession, is open to all courts in which the same may be put at issue.

The only question I need consider is, whether the complainants show that they are entitled to the possession of the ice. This question carries with it the whole matter which is now before me. It is not necessary to determine the validity of the sale to the complainants, or whether it was in accordance with the laws of Illinois. The undisputed facts are, that the personal property which belonged to the estate of the deceased was in Illinois at the time of her death, laden on board barges, bound for New Orleans under a contract which necessitated that it should be brought here charged with the freight; that the amount of freight equaled the value of the property, and that the money with which the decedent agreed to pay freight was in Illinois. Under these circumstances, Illinois being the domicile of the decedent at the time of her death, I think that the administrators were certainly authorized to make provision for the payment of the freight. It is not merely the case of personal property passing from the territorial limits of the state of a deceased person to another jurisdiction, but of property which had been destined and consigned under certain conditions for a market merely for sale, subject to an incumbrance which would consume the property, and might leave a residuary liability. It is the case of property shipped from the domicile of the decedent after her death to another place, merely as a place of market. It seems to me, under these circumstances, that property, vested in the administrators in Illinois, which is merely shipped into another state to be sold, does not pass out of the administrators merely by crossing the state line. It is to all intents and purposes localized, so far at least as to allow the administrators of the place of the domicile to dispose of it. Whether they have disposed of it by a valid sale, it is not necessary now to say. They certainly had the right to authorize the complainants to pay the freight, and by their paying the freight they became subrogated to the rights of the carriers, one of which is to hold the property until they are repaid. It is not the case of property merely passing

into this state, but it comes destined here by the decedent as a market, and charged with a burden which, unless met by some one, would necessitate its sale by the carriers, or from the nature of the locality its destruction by the semi-tropical heat.

Justice Story, in his Conflict of Laws (§ 520) says: "Indeed, according to the common course of commercial business, ships and cargoes, and the proceeds thereof, locally situated in a foreign country at the time of the death of the owner, always proceed on their voyages and return to the home point, without any suspicion that all the parties concerned are not legally entitled so to act, and they are taken possession of and administered by the administrator of the forum domicilii, with the constant persuasion that he may not only rightfully do so, but that he is bound to administer them as part of the funds appropriately in his hands." See also Embry v. Millar, 1 A. K. Marsh, 300.

I need not consider whether the restrictions created by the statute of Illinois as to sales by executors apply to property shipped elsewhere for market, nor need I consider the claim of the administrator appointed in Louisiana with reference to the regularity of his appointment, or with reference to his right to the custody of property found here, which was a part of the estate of the decedent, and which was not sent here for market, and not burdened with the lien for freight up to its value, and possibly of not sufficient value unless immediately disposed of to discharge the obligation of the estate for the freight. It is enough for the purposes of this application to say, that this property is in the hands of the complainants, and has been put in their hands by the administrators of the deceased, who had the right to deal with it, certainly to the extent of providing for the payment of the freight, and the payment by the complainants of this freight gives them the right to hold this property, certainly until they are indemnified.

Let, therefore, the injunction issue upon the complainants giving bond, with good and sufficient security, in the sum of $5,000.